UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YPF HOLDINGS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | C.A. NO. H-14-3695 |
| | § | |
| KARLIN PACIFIC, L.L.C. *and* | § | |
| OSVALDO SORTINO | § | |
| | § | |
| Defendants. | § | |

**KARLIN PACIFIC LLC'S ANSWER, DEFENSES, AND
JURY DEMAND TO PLAINTIFF YPF HOLDINGS, INC.'S
<u>FIRST AMENDED ORIGINAL COMPLAINT</u>**

Defendant Karlin Pacific, LLC ("KP") hereby files its Answer, Defenses, and Jury Demand to the First Amended Complaint filed by Plaintiff YPF Holdings, Inc. ("YPF").

## <u>INTRODUCTION</u>

This dispute arises from an agreement between KP and YPF, in which KP agreed to provide technical assessment of the geological, economic, and environmental conditions of thirty-five mature oil fields located in Venezuela, Argentina, and Ecuador. KP performed the work satisfactorily, and YPF accepted the work without complaint.

By way of background, YPF sought bids for the technical work to be performed. Upon information and belief, KP was selected for the work for several

reasons: (1) it was the low bidder, (2) KP's principal, Osvaldo Sortino, has experience in the oil and gas industry and has worked with YPF and its related entities on various occasions, and (3) KP disclosed it would subcontract the work to a geologist familiar to YPF, Mr. Bellosi. Mr. Bellosi performed most of the work in YPF's own offices, under YPF's own supervision. Again, YPF was satisfied with Bellosi's work.

After the work has been completed, and after KP has been paid by YPF, YPF now alleges that it has not been reimbursed by its parent company, YPF, S.A. for the services performed by KP, attaching a single letter from YPF, S.A. to the First Amended Complaint. As an initial matter, KP has yet to see the actual agreement between YPF and its parent company. More importantly though, the contract between KP and YPF does not condition YPF's obligation to pay KP on receipt of funds from YPF, S.A., nor does it mention the agreement between YPF and its parent company at all. KP was not privy to the agreement between YPF and its parent company, and that agreement—whatever it may be—does not alter KP's obligations.

Paragraph 15 of the Second Amended Agreement (the "Agreement") between the parties provides that YPF may inspect KP's records "*related to the Technical Services performed hereunder*" to allow YPF to evaluate and verify "any invoices, payments or claims submitted by [KP] or any of [KP's] payees *pursuant*

2

*to the Agreement.*"  YPF requested records from KP, and KP has provided them to YPF.

The records revealed that KP paid about half of the contract sum to Bellosi for the subcontracted work, and made a profit of the other half.  Because this was a turnkey contract, such a profit was permitted and agreed to.  Nevertheless, it has apparently made YPF unhappy.  Frustrated by KP's profits, YPF's First Amended Complaint seeks to divest KP of the money made under the Agreement, despite the acknowledgment that the work was satisfactorily performed—apparently both the profits and the amounts paid for costs incurred.  In other words, YPF is asking the Court to allow YPF to retain the benefits of the contract for free, despite KP's substantial performance of the contract.

But the demands do not end there.  YPF now seeks broader audit rights than provided in the contract and has asked KP to turn over information that has nothing to do with the "Technical Services" performed under the parties' agreement.  After this litigation was commenced, upon Court order, KP provided YPF with financial information disclosing the destination of every dollar received by KP under the Agreement—even those that are completely unrelated to the "Technical Services" performed under the parties' agreement.   KP satisfied its obligations under the Agreement and more.

YPF has also added Mr. Sortino, individually, as a party. But the contract at issue is between YPF and KP. Sortino was not a party; he is merely a principal of KP. Plus, YPF ignores the long history between Sortino and YPF, who have done business together for years. Upon information and belief, Sortino's success in the industry was the reason that YPF hired KP. But this Answer is made solely on behalf of KP, not Mr. Sortino individually, and will not attempt to describe in detail the long history between Sortino and YPF or its parent company.

In sum, YPF is seeking to saddle KP with the obligation to help it collect reimbursement of the payment from YPF, S.A. The contract does not impose such an obligation on KP. In fact, consequential damages, of the type now sought by YPF are excluded by the contract.

## **ANSWER TO FIRST AMENDED COMPLAINT**

This Answer is made solely on behalf of Karlin Pacific, LLC. Each of the paragraphs below corresponds to the same-numbered paragraphs in the First Amended Complaint. KP denies all the allegations in the First Amended Complaint, whether express or implied, that are not specifically admitted below. KP denies the allegations, both implied and express, set forth in the Introduction of the First Amended Complaint. KP responds to the specific allegations in the First Amended Complaint as follows:

1. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1, and therefore denies same.

2. KP admits the allegations contained in paragraph 2.

3. KP admits that Sortino is an individual, but KP denies all the remaining allegations contained in paragraph 3. KP is a legal entity separate and apart from Sortino.

4. The allegations contained in paragraph 4 are legal conclusions to which no answer is required.

5. The allegations contained in paragraph 5 are legal conclusions to which no answer is required.

6. KP admits that the parties entered into the Professional Service Agreement for Economic Analysis of the Mature Fields, which was amended on October 7, 2013 and November 12, 2013, and the terms of the Agreement and amendments speak for themselves. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the retention of YPF by its related entity, and therefore denies same. KP denies the remainder of the allegations of paragraph 6.

7. KP admits allegations contained in paragraph 7.

8. KP admits the allegations contained in paragraph 8.

9. KP admits the allegations contained in paragraph 9.

10. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the contractual relationship between YPF and its related entity, and therefore denies same.

11. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the contractual relationship between YPF and its related entity, and therefore denies same.

12. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the contractual relationship between YPF and its related entity, and therefore denies the same.  The terms of section 15 of the Agreement speak for themselves, and KP admits that the language in paragraph 12 of the First Amended Complaint is found in section 15 of the Agreement (without the emphasis).

13. KP denies the allegations contained in paragraph 13.

14. The terms of the Agreement speak for themselves, and KP admits that the allegations related to the Agreement's audit provision.  KP also admits that the final payment was made on March 6, 2014. KP denies the remainder of the allegations in paragraph 14.

15. The terms of the Agreement speak for themselves, and KP admits that the language in paragraph 15 of the First Amended Complaint is found in section

11 of the Agreement. However, KP denies that the indemnity paragraph is applicable to this dispute and that KP is obligated to indemnify Holdings for any losses sustained by YPF from its parent company's refusal to pay YPF. KP further denies that it breached the Agreement. Therefore, KP denies all other allegations in paragraph 15.

16. KP denies that YPF specifically identified the documents it intended to review. KP admits the remaining allegations contained in paragraph 16.

17. KP admits the allegations contained in paragraph 17.

18. KP admits the allegations contained in paragraph 18.

19. KP denies that section 15 of the Agreement provides YPF with ample and broad audit rights. The terms of section 15 of the Agreement speak for themselves, and KP denies YPF's interpretation of section 15 of the Agreement. KP admits that it responded on August 22, 2014 that Mr. Bellosi's information would not be delivered to it by August 26, 2014. KP denies the remainder of allegations in paragraph 19.

20. KP admits the allegations contained in paragraph 20.

21. KP admits that it provided YPF with the information listed therein. KP denies the remainder of allegations contained in paragraph 21.

22. KP admits the allegations contained in paragraph 22 with respect to the language of the referenced emails, which is apparent on the face of the emails. KP denies the remainder of the allegations contained in paragraph 22.

23. KP admits the allegations contained in paragraph 23 with respect to the statements contained in the email, which is apparent on the face of the email. KP denies the remainder of the allegations contained in paragraph 23.

24. KP admits the allegations contained in paragraph 24 of the First Amended Complaint with respect to the statements contained in the letter, which is apparent on the face of the letter. KP denies the remainder of the allegations contained in paragraph 24.

25. KP admits the allegations contained in paragraph 25 with respect to the statements contained in the email, which is apparent on the face of the email. KP denies the remainder of the allegations contained in paragraph 25.

26. KP admits the allegations contained in paragraph 26 with respect to the statements contained in the letter, which is apparent on the face of the letter. KP denies the remainder of the allegations contained in paragraph 26.

27. KP denies the allegations contained in paragraph 27. To the contrary, KP has complied with the Agreement, and has provided all of its documentation required under the audit provision of the Agreement and more.

28. KP denies the allegations contained in paragraph 28 that YPF has not been provided with information. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the relationship between YPF and its related entity, and therefore denies the same.

29. KP denies the allegations contained in paragraph 29.

30. KP denies the allegations contained in paragraph 30.

31. The Court's record speaks for itself. Nonetheless, KP admits that to date, the Court has held three conferences with the parties and that the Court has issued orders related to the case. KP denies the remainder of the allegations contained in paragraph 31.

32. KP admits that the Court issued an order dated March 6, 2015. The Court's order speaks for itself. KP denies the remainder of the allegations in paragraph 32.

33. KP admits that it complied with the Court's March 6, 2015 order and provided documentation to YPF. KP denies the remainder of the allegations in paragraph 33.

34. KP admits that the Court issued an order dated April 16, 2015. The Court's order speaks for itself. KP denies the remainder of the allegations in paragraph 34.

35. KP admits that it complied with the Court's April 16, 2015 order and provided YPF and the Court with a handwritten letter by Sortino. The letter speaks for itself. Moreover, as stated in the letter, it was written only in Mr. Sortino's capacity as an agent of KP, not his individual capacity. KP denies the remainder of the allegations in paragraph 35.

36. Again, the letter speaks for itself. KP admits that the quoted language is contained in a translation of the Sortino letter filed by KP, which is apparent on the face of the translated letter. KP denies the remainder of the allegations in paragraph 36.

37. KP admits that the three companies were listed in the information produced by KP in response to the Court's March 6, 2015 order. KP denies the remainder of the allegations in paragraph 37.

38. KP admits that the Court issued an order dated May 13, 2015. The Court's order speaks for itself. KP denies the remainder of the allegations in paragraph 38.

39. KP admits that it complied with the Court's May 13, 2015 and that the companies identified in the May 13, 2015 order had nothing to do with the YPF project. KP denies the remainder of the allegations in paragraph 39.

40. KP admits the allegations contained in paragraph 40 with respect to the statements contained in the letter to Ms. Ponig, which are apparent on the face

of the letter, except to clarify that KP has asserted that *"[t]o the best of Karlin Pacific's knowledge,* th[e] company has no connections to YPF Holdings or any YPF-affiliated company or individual." (emphasis added). KP also admits that the Court's May 13, 2015 order did not request KP to state the nature of its dealings with any of the three entities identified in the order. KP denies the remainder of the allegations in paragraph 40.

41. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to information available from the State of New Jersey's Department of Banking and Insurance, and therefore denies the same. KP denies the remainder of the allegations in paragraph 41.

42. KP admits the allegations contained in paragraph 42 with respect to the statements contained in the letter to Ms. Ponig, which are apparent on the face of the letter, except to clarify that KP has asserted that *"[t]o the best of Karlin Pacific's knowledge,* th[e] company has no connections to YPF Holdings or any YPF-affiliated company or individual." (emphasis added). KP also admits that the Court's May 13, 2015 order did not request KP to state the nature of its dealings with any of the three entities identified in the order. KP denies the remainder of the allegations in paragraph 42.

43. Again, the letter speaks for itself. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

relating to information contained in the records of the Panamanian Public Registry, and therefore denies the same. KP denies the remainder of the allegations in paragraph 43.

44. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Service & Commerce Group's registered agent, and therefore denies the same. KP denies the remainder of the allegations in paragraph 44.

45. KP admits the allegations in paragraph 45.

46. KP denies the allegations in paragraph 46.

47. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 47, and denies the same.

48. KP denies the allegations in paragraph 48.

49. KP admits the allegations contained in paragraph 49 with respect to the statements contained in the letter to Ms. Ponig, which are apparent on the face of the letter. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Innovating Business Consultants, Ltd.'s principal place of business, and therefore denies the same. KP denies the remainder of the allegations in paragraph 49.

50. KP admits the allegations contained in paragraph 50 with respect to the statements contained in the letter to Ms. Ponig, which are apparent on the face of the letter, except to clarify that KP has asserted that *"[t]o the best of Karlin Pacific's knowledge,* th[e] company has no connections to YPF Holdings or any YPF-affiliated company or individual." (emphasis added). KP denies the remainder of the allegations of paragraph 50.

51. Again, the letter speaks for itself. KP denies the allegations of paragraph 51.

52. KP denies the allegations of paragraph 52.

53. KP strongly denies the allegations of paragraph 53. KP has been more than forthcoming, and has complied with all of the Courts orders.

54. KP denies the allegations contained in paragraph 54.

55. KP admits the allegations contained in paragraph 55.

56. KP denies the allegations contained in paragraph 56.

57. KP denies the allegations contained in paragraph 57.

58. KP denies the allegations contained in paragraph 58.

59. KP denies the allegations contained in paragraph 59.

60. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the contractual relationship

between YPF and its related entity, and therefore denies same. KP denies the remainder of the allegations contained in paragraph 60.

61. KP denies the allegations contained in paragraph 61.

62. KP denies the allegations contained in paragraph 62. The damages alleged by YPF are damages, and therefore are foreclosed by the express terms of the Agreement. **Ex. A-1** to YPF's First Amended Complaint at 10, § 9(h).

63. KP denies the allegations contained in paragraph 63.

64. KP denies the allegations contained in paragraph 64.

65. KP admits that the Agreement is a valid and enforceable written contract and that YPF paid approximately $2.9 million to KP in exchange for the Technical Services provided under the Agreement. KP denies the remainder of the allegations contained in paragraph 65.

66. KP denies the allegations contained in paragraph 66.

67. KP denies the allegations contained in paragraph 67.

68. KP denies the allegations contained in paragraph 68.

69. KP is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the contractual relationship between YPF and its related entity, and therefore denies same. KP denies the remainder of the allegations contained in paragraph 69.

70. KP denies the allegations contained in paragraph 70.

71. KP denies the allegations contained in paragraph 71.

72. KP denies the allegations contained in paragraph 72.

73. KP is a separate legal entity from Mr. Sortino, and answers only in its corporate capacity. To the extent applicable, KP denies the allegations contained in paragraph 73.

74. KP is a separate legal entity from Mr. Sortino, and answers only in its corporate capacity. To the extent applicable, KP denies the allegations contained in paragraph 74.

75. KP denies the allegations contained in paragraph 75.

76. KP denies the allegations contained in paragraph 76.

77. KP denies the allegations contained in paragraph 77.

78. KP denies the allegations contained in paragraph 78.

79. KP denies the allegations contained in paragraph 79.

80. KP denies the allegations contained in paragraph 80.

81. KP denies the allegations contained in paragraph 81.

82. KP denies the allegations contained in paragraph 82.

83. KP denies the allegations contained in paragraph 83.

84. KP denies the allegations contained in paragraphs 84(a)–(h). KP denies that YPF is entitled to any relief against KP, either as prayed for in the First Amended Complaint or otherwise. Moreover, KP asserts that exemplary damages

are expressly prohibited by the terms of the Agreement. **Ex. A-1** to YPF's First Amended Complaint at 10, § 9(h).

## DEFENSES & AFFIRMATIVE DEFENSES

KP asserts the following defenses and affirmative defenses. By pleading these defenses, KP does not in any way agree or concede that it has the burden of proof or persuasion on any of these issues. Moreover, KP reserves any other general defenses which may be properly raised pursuant to the Federal Rules of Civil Procedure, including but not limited to those defenses and denials raised in the proceeding paragraphs.

### First Defense—Failure to State a Claim

85. YPF's purported claims are barred because it fails to state a claim upon which relief may be granted.

### Second Defense—Injunctive Relief is Inappropriate

86. YPF is not entitled to injunctive relief because (a) it has no irreparable harm, (b) it has no probable right of recovery, and (c) it has an adequate remedy at law.

### Third Defense—Substantial Performance

87. YPF's breach of contract claim fails because KP substantially performed the Agreement, fulfilling all material obligations under the Agreement. YPF has admitted that the Technical Services provided under the Agreement were

satisfactory, and has retained their benefit. Even if KP breached the audit provision as YPF alleges, the breach was not material and did not substantially impair YPF's rights under the Agreement.

### Fourth Defense—Exclusion of Consequential Damages

88. The Agreement expressly prohibits the recovery of consequential damages. **Ex. A-1** to YPF's First Amended Complaint at 10, § 9(h). YPF's alleged damages resulting from its inability to collect reimbursement from its parent company are consequential in nature and are precluded.

### Fifth Defense—Exclusion of Exemplary Damages

89. The Agreement expressly prohibits the recovery of exemplary damages. **Ex. A-1** to YPF's First Amended Complaint at 10, § 9(h).

### JURY DEMAND

87. KP demands a trial by jury on all issues so triable.

        Respectfully submitted,

        **FOGLER, BRAR, FORD, O'NEIL & GRAY LLP**

        */s/ Murray Fogler*
            Murray Fogler
            ***Attorney in Charge***
            State Bar No. 07207300
            S.D. Tex. Bar No. 2003
            mfogler@fbfog.com
        711 Louisiana Street, Suite 500
        Houston, Texas  77002
        Tel:  713.481.1010
        Fax:  713.574.3224

OF COUNSEL:

**FOGLER, BRAR, FORD, O'NEIL & GRAY LLP**

Jas Brar
State Bar No. 24059483
S.D. Tex. Bar No. 892270
jbrar@fbfog.com
Michelle E. Gray
State Bar No. 24078586
S.D. Tex. Bar No. 2148676
mgray@fbfog.com

**ATTORNEYS FOR DEFENDANT
KARLIN PACIFIC, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that on September 3, 2015, a true and correct copy of this pleading has been served on all counsel of record by the Electronic Service Provider, if registered, otherwise by email and/or fax, as follows:

Christina E. Ponig
Brett D. Solberg
DLA PIPER, LLP (US)
1000 Louisiana St., Suite 2800
Houston, Texas 77002

    */s/ Murray Fogler*
    **MURRAY FOGLER**